# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### COLUMBIA DIVISION

**STEVEN LANEY and ALEXANDROS STELLER,**
**Individually and on behalf of all**
**Others similarly situated**

### PLAINTIFFS

**VS.**                                 CIVIL ACTION NO:_____3:18-2730-TLW_____

**SOUTH CAROLINA FARM BUREAU**
**INSURANCE COMPANY, SOUTH**
**CAROLINA FARM BUREAU**
**MUTUAL INSURANCE COMPANY,**
**PALMETTO CASUALTY INSURANCE**
**COMPANY, SOUTHERN FARM BUREAU**
**CASUALTY INSURANCE COMPANY,**
**SOUTHERN FARM BUREAU LIFE**
**INSURANCE COMPANY**

### DEFENDANTS

### INDIVIDUAL, COLLECTIVE ACTION AND CLASS ACTION COMPLAINT
### FOR DECLARATORY JUDGMENT AND DAMAGES

**COME NOW** Steven Laney and Alexandros Steller (collectively "Plaintiffs"), individually and as representatives of all persons similarly situated, and bring this action against Defendants South Carolina Farm Bureau Insurance Company ["SCFB"], South Carolina Farm Bureau Mutual Insurance Company ["SCFBM"], Palmetto Casualty Insurance Company ["PCI"], Southern Farm Bureau Casualty Insurance Company ["SFBC"], and Southern Farm Bureau Life Insurance Company ["SFBL"], an integrated enterprise that jointly employed the Plaintiffs and employed and/or employs other similarly situated individuals, [hereinafter referred to collectively as "Farm Bureau"].

### INTRODUCTION

1

1. This is a civil action for violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* [hereinafter "FLSA"]. The Plaintiffs bring this action on behalf of themselves and on behalf of all individuals similarly situated who work or worked as insurance agents ("Agents") for the five Farm Bureau Defendants pursuant to contract and are or were misclassified as independent contractors when, in fact, they are or were nonexempt employees.

2. The Plaintiffs bring this action on behalf of themselves and on behalf of all of those similarly situated, seeking to recover payment of wages lost or unpaid back wages, liquidated damages, punitive damages, reasonable attorneys' fees, costs of prosecution of this action, and pre- and post-judgment interest.

3. This case implicates all five Farm Bureau Defendants' policies of misclassifying employees as independent contractors in an effort to avoid overtime pay liability under the FLSA. Each of the Farm Bureau Defendants misclassified the Plaintiffs and others similarly situated and then required or permitted them to work as Agents in excess of 40 hours per week without paying or compensating them for their overtime hours.

4. In addition to misclassifying Agent employees as independent contractors and requiring or allowing them to work in excess of 40 hours per week, the five Farm Bureau Defendants also refused or failed to keep proper records of hours worked as required by the FLSA and refused or failed to compensate the Plaintiffs and others similarly situated for their overtime work at the applicable overtime rate of pay. The Farm Bureau Defendants still continue these wrongful and unlawful practices at the expense of and to the detriment of their Agents.

5.  The Farm Bureau Defendants' conduct violates the FLSA which requires employers to keep proper records of hours worked and to compensate nonexempt employees for their overtime work at a minimum rate of one and one-half times their regular rate of pay.  See 29 U.S.C. § 207(a).

6.  The Plaintiffs, as the putative class representatives, seek certification of this suit as a collective and class action on behalf of all current and former misclassified Agents of the five Farm Bureau Defendants in locations throughout South Carolina.

## THE PARTIES

7.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

8.  Steven Laney resides at 311 McDonald Place, Bishopville, South Carolina 29010. Laney began his career with the Farm Bureau Defendants when he was hired as an Agent in Sumter, South Carolina in July of 1999.  He worked in that capacity until December 31, 2016, when the Farm Bureau Defendants terminated his Agent contracts.  During all applicable times, Laney regularly worked as an Agent in excess of 40 hours per week.  However, the five Farm Bureau Defendants misclassified him as an independent contractor in an effort to avoid liability under the FLSA and refused or failed to pay him overtime pay.

9.  Alexandros Steller resides at 3601 Dwyer Lane, Aiken, SC 29801, South Carolina 29801.  Steller began his career with the Farm Bureau Defendants when he was hired as an Agent in Aiken, South Carolina in February of 2006.  He worked in that capacity until February of 2018, when the Farm Bureau Defendants terminated his Agent contracts.  During all applicable times, Steller  regularly worked as an Agent in excess of 40 hours per week. However, the five Farm Bureau Defendants misclassified him as an independent contractor in an effort to avoid liability under the FLSA and refused or failed to pay him overtime pay.

10.  Defendant South Carolina Farm Bureau Insurance Company ["SCFB"] is a South Carolina Corporation.  It may be served with process through service upon its registered agent, William O. Courtney, Jr., 724 Knox Abbott Drive, Cayce, SC 29033.

11.  Defendant South Carolina Farm Bureau Mutual Insurance Company ["SCFBM"] is a South Carolina Corporation.  It may be served with process through service upon its designated agent, the South Carolina Insurance Commission.

12.  Defendant Palmetto Casualty Insurance Company ["PCI"] is a South Carolina Corporation.  It may be served with process through service upon its registered agent, John G. Richards, 1612 Marion Street, Columbia, SC 29201.

13.  Defendant Southern Farm Bureau Casualty Insurance Company is a Mississippi Corporation.  It may be served with process through service upon its registered agent, Steve W. Ingram, 1800 East County Line Road, Ridgeland, Mississippi 39157.

14.  Defendant Southern Farm Bureau Life Insurance Company is a Mississippi Corporation.   It may be served with process through service upon its registered agent, Corporation Service Company, 5760 I-55 North, Suite 150, Jackson, Mississippi 39211.

## JURISDICTION AND VENUE

15.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

16.  This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because the claims arise under the FLSA.

17.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1337 (jurisdiction over civil actions arising under any Act of Congress regulating commerce) 29 U.S.C. § 216(b) (jurisdiction over action to recover liability prescribed under the FLSA), 28 U.S.C. § 2201 (the Federal Declaratory Judgment Act), and Rule 57 of the Federal Rules of Civil Procedure.

4

18.  Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the FLSA claims occurred within this district.

## ENTERPRISE AND JOINT EMPLOYMENT

19.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

20.  All five Farm Bureau Defendants are an integrated enterprise, each of which jointly employed the Plaintiffs and those similarly situated.

21.  All five Farm Bureau Defendants constitute a single enterprise under 29 U.S.C. § 203(r) because they are an integrated enterprise and/or perform related activities for a common business purpose.  There is an interrelation between their operations, and they have common management, common ownership or financial control and centralized control of labor relations.  All five Farm Bureau Defendants had control over employment practices and decisions related to the Plaintiffs and to others similarly situated.  They continue to have control over employment practices and decisions related to Agents.

22.  The provisions regarding Agent responsibilities in the Farm Bureau Defendants' Agent Contracts are good examples of the integration of the Farm Bureau entities and the integration of their operations and practices.  For example, Agents are required to perform services in accordance with "the Farm Bureau Insurance Companies Agents Manual." Any of the "Farm Bureau" companies are allowed to place a "first lien" on compensation due the Agents.

23.  Other examples are readily available on the Defendants' websites wherein they refer to themselves and/or related entities generically as "Farm Bureau."

24.  A LinkedIn account is maintained in the generic name of "Farm Bureau Insurance of South Carolina."  The integrated enterprise made up of the five Farm Bureau Defendants refers to itself as "Farm Bureau Insurance of South Carolina" and "Farm Bureau Insurance" in its

LinkedIn postings and uses the "Farm Bureau" trademark in photos posted on its LinkedIn account pages.

25.   Additionally, although their contracts are presumably with specific "Farm Bureau" companies, Farm Bureau Agents and Agency Managers market themselves as "Farm Bureau" and "SC Farm Bureau Insurance" Agents and Agency Managers.  They also market themselves as "South Carolina Farm Bureau Insurance Companies."

26.   All five Farm Bureau Defendants engaged (and continue to engage) in activities related to soliciting, selling and servicing insurance policies under the Farm Bureau aegis.  All five Farm Bureau Defendants utilized (and continue to utilize) the same agency force for the soliciting, selling and servicing of their insurance products in South Carolina.

27.   All five Farm Bureau Defendants worked (and continue to work) together to offer insurance products and services under a single Farm Bureau identity.

28.   All five Farm Bureau Defendants shared (and continue to share) a unified, advertising mark (logo).  In fact, the Farm Bureau Defendants share the exact same "Advertising Policy" and "Social Media Policy and Guidelines."

29.   All five Farm Bureau Defendants jointly utilized (and continue to utilize) a shared method of compensating Agents.

30.   All five Farm Bureau Defendants, formally or as a matter of practice, jointly determined, shared or allocated the ability to direct, control and supervise the Plaintiffs and other misclassified Agents, by both direct and indirect means.  Farm Bureau Defendants exert control over their agency force's advertising and use of Facebook and other social media forums.  They continue to jointly determine, share or allocate the ability to direct, control and supervise other misclassified Agents.

31.   By way of example, Farm Bureau Agents are managed and supervised by Agency Managers.  In turn, District Managers, who were themselves managed and supervised by the Vice President of Sales, managed and supervised (and continue to manage and supervise) Agency Managers and were (and continue to be) responsible for all of the marketing efforts such as advertising and sales promotions for all product lines sold by the Farm Bureau entities.

32.   By way of an additional example and as indicated above, the Farm Bureau Defendants share the same advertising and social media policies and guidelines.    In one of the Defendants' publications governing advertising and social media use by South Carolina Agents, Defendants expressly referred to themselves as "associated companies" and as "The Farm Bureau family of companies."  There, Defendants also represented (and admitted) that they utilize a common agency force to market their products.

33.   All five Farm Bureau Defendants, formally or as a matter of practice, jointly determined, shared and/or allocated the power, directly or indirectly, to hire and fire the Plaintiff and other misclassified Agents or to modify the terms and conditions of their employment.

34.   For example, the Plaintiffs and other misclassified employees were subject to employment-related agreements with the Farm Bureau Defendants whereby the Farm Bureau Defendants misclassified them as independent contractors. These agreements required them to follow guidelines, instructions and rules contained within the Farm Bureau Defendants' rate books, compliance manuals, guidelines and other documents, all of which were subject to change at the Farm Bureau Defendants' sole discretion.    The same agreements reserved the Farm Bureau Defendants' right to terminate the Plaintiffs and the other misclassified employees.  The Farm Bureau Defendants continues to utilize these practices with regard to Agency Managers throughout the state of South Carolina.

35.   The relationships between the Farm Bureau entities are permanent and longstanding.

36.   The Farm Bureau entities operate subject to common management, supervision and control.

37.   The Plaintiffs and other misclassified Agents day-to-day experience was that South Carolina Farm Bureau (a/k/a "Farm Bureau Insurance of South Carolina") was their employer. They, along with supervisors and agents, were considered to be working for "South Carolina Farm Bureau" (a/k/a "Farm Bureau Insurance of South Carolina").   All five Farm Bureau Defendants managed the Plaintiffs and other misclassified Agents concerning all lines of Farm Bureau insurance sold, including all South Carolina Farm Bureau lines as well as casualty and life lines sold by South Carolina Farm Bureau Insurance Company, South Carolina Farm Bureau Mutual Insurance Company, Palmetto Casualty Insurance Company, Southern Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Life Insurance Company.   The Farm Bureau Defendants still continue these practices with regard to its Agents.

38.   All five Farm Bureau Defendants paid the Plaintiffs and other misclassified Agents. During part of the Plaintiffs' tenure with the Farm Bureau Defendants, the five Farm Bureau Defendants supplied them and other Agents (both past and current) with facilities, computers and office supplies which the Plaintiffs and other Agents similarly situated used for all of their work for Farm Bureau, including soliciting, selling and servicing policies issued by each of the Farm Bureau companies.   During other parts of the Plaintiffs' tenure with the Farm Bureau Defendants, the Farm Bureau Defendants required them and other Agents similarly situated to rent their office spaces from their specific County Farm Bureau entities and to pay for utilities and secretaries.

39. The Farm Bureau Defendants set "service fees" for the Plaintiff and for other similarly situated Agents. The "service fees" were actually the operating budgets for the county offices. They also required members of their agency force to pay other fees – for example, a portion of the overall cost of their social media forum, "Hearsay Social."

## FLSA COVERAGE

40. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

41. The Plaintiffs bring this Complaint as a collective and class action, alleging violations of the FLSA on behalf of themselves and all similarly situated individuals. The putative class is defined as:

> All individuals who, through a contract or agreement with any of the Farm Bureau entities, perform or performed as Agents for any of the Farm Bureau entities and who were classified by the Farm Bureau entities (or, rather, misclassified by the Farm Bureau entities) as "independent contractors" anywhere in the state of South Carolina at any time from the date that is three years preceding the commencement of this action through the close of the Court-determined opt-in period and who file a consent to join in this action.

The putative class also includes the Plaintiffs, and they reserve the right to modify this definition prior to conditional certification of the putative class.

42. The Plaintiffs, along with current and former misclassified Agents of the Farm Bureau Defendants, are similarly situated in that they have or had substantially similar job requirements and pay provisions and are or were subject to the Farm Bureau Defendants' common practices, policies and/or plans controlling their daily job functions.

43. At all material times, all five Farm Bureau Defendants were employers within the meaning of the FLSA. See 26 U.S.C. § 3121(h) and 29 U.S.C. § 203(d).

44. The five Farm Bureau Defendants controlled the nature, pay structure, and employment relationship with the Plaintiffs and all Agents similarly situated.

45.    The five Farm Bureau Defendants have and/or had the authority to hire and fire Agents and the authority to direct, supervise and manage the work of Agents.  During the Plaintiffs' tenure with the Farm Bureau Defendants, the Farm Bureau Defendants had the authority to sign on the companies' checking accounts, including payroll accounts. The Farm Bureau Defendants also had the authority to make decisions regarding the Plaintiffs and similarly situated Agents compensation and capital expenditures.   The Farm Bureau Defendants' State Office set the Plaintiffs and other Agent's compensation and could change the manner of compensation at any time.

46.    Additionally, the Farm Bureau Defendants were responsible for the day-to-day affairs of all of the Farm Bureau agencies.  In particular, they were responsible for determining whether they complied with the FLSA.

47.    As such, the Farm Bureau Defendants acted directly or indirectly in the interest of the employment of the Plaintiffs and other Agents (both former and current) as their employers, which make them liable under the FLSA.

48.    Furthermore, at all material times, the Farm Bureau Defendants constituted an integrated enterprise engaged in interstate commerce or in the production of goods or services for interstate commerce because they have or have had employees engaged in interstate commerce.

49.    Each of the five Farm Bureau Defendants acted in related activities performed through a unified operation and common control for a common business purpose (i.e., to solicit, sell and service insurance policies to customers in South Carolina under the Farm Bureau aegis).

50. The Farm Bureau Defendants have had, and continue to have, annual gross volumes of sales made or done of not less than $500,000.00. See 29 U.S.C. § 203(s)(1).

## COLLECTIVE ACTION ALLEGATIONS

51. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

52. The Plaintiff brings this action pursuant to the FLSA, 29 U.S.C. § 216(b) (and other applicable statutes, laws and common law) on their own behalf and on behalf of the putative class described hereinabove.

53. The Plaintiffs do not bring this action on behalf of any executive, administrative or professional employee exempt from coverage under the FLSA.

54. A collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the Agents described are "similarly situated" to the Plaintiffs. The employees on behalf of whom the Plaintiffs bring this collective action are similarly situated because they have been or are employed in the same or similar positions; they were or are subject to the same or similar wrongful and unlawful practices, policies and/or plans; and their claims are based upon the same legal theories.

55. The Plaintiffs estimate that the collective class, including both current and former Agents over the relevant period, will include well over 400 members. The precise number of collective class members should be readily available from a review of the Farm Bureau Defendants' records and from input received from the collective class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

56. The Plaintiffs and the putative class members' entitlement to overtime pay, except for the amounts, are identical and depend on one uniform factual question

regarding whether, as a matter of economic reality, the Plaintiffs and the putative class members are or were reliant on the Farm Bureau Defendants to earn a living or are or were in business for themselves.

57.    Similarly, the classification status of the Plaintiffs and the putative class members involve an identical legal question regarding whether the Farm Bureau Defendants' Agents acted as employees, and not independent contractors, such that the Defendants owed (and owe) them a minimum wage, overtime and record-keeping obligations under the FLSA.

58.    The Plaintiffs and the putative class members share the same interest in that the outcome of this action will determine whether they were (or are) either independent contractors or employees under the FLSA.  Because the facts in each case are similar, if not altogether identical, the factual assessment and legal standards lend themselves to a collective action.

## CLASS ACTION ALLEGATIONS

59.    The foregoing paragraphs are incorporated herein as if set forth in their entirety.

60.    The Plaintiffs also bring this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of a putative class defined hereinabove.  The Plaintiffs reserve the right to amend the putative class definition as necessary.

61.    The five Farm Bureau Defendants regularly permitted and required the Plaintiffs and members of the putative class to work more than 40 hours per week without overtime compensation.

62.  Upon information and belief, the Farm Bureau Defendants knew that the Plaintiffs and all similarly situated individuals performed work that required overtime pay.

63.  The Farm Bureau Defendants have operated under a scheme to deprive the misclassified Agents of overtime compensation by failing to properly compensate them for all time worked.

64.  The Farm Bureau Defendants' conduct, as set forth in this Complaint, was willful and has caused significant damage to the Plaintiffs and all similarly situated individuals.

65.  The Plaintiffs share the same interests as the putative class members and will be entitled to overtime compensation, liquidated damages, punitive damages, reasonable attorney's fees, costs of prosecution of this action, and pre- and post-judgment interest owed to them under nearly identical factual and legal standards as the remainder of the putative class.

66.  The putative class meets the numerosity requirement of Rule 23(a)(1) because, during the relevant time period, the Farm Bureau Defendants employed a number of persons in all or nearly all counties in South Carolina who were all subjected to working as Agents in excess of forty hours per work week, without being paid overtime pay.  The precise number of class members should be readily available from a review of the Farm Bureau Defendants' records and from input received from the putative class members.

67.  The putative class meets the commonality requirement of Rule 23(a)(2) because, during the relevant period, the Farm Bureau Defendants engaged in a common

course of conduct and practices that violated (and continue to violate) the legal rights of the Plaintiffs and the putative class members. Any individual question the Plaintiffs' claims present will be far less central to this litigation than the numerous and material questions of law and fact common to the class, including but not limited to: whether the Plaintiffs and the other putative class members, as a matter of economic reality, were or are reliant on the Farm Bureau Defendants to earn a living or were or are self-reliant and independent; whether the Plaintiffs and the other putative class members' work was an integral part of the Farm Bureau Defendants' businesses of soliciting, selling and servicing insurance policies; whether Plaintiffs' and the other putative class members' managerial skills affected their opportunity for profit or loss; how Plaintiffs' and the other putative class members' investments into the businesses compared to the Farm Bureau Defendants' investments into the businesses; whether the relationships between the parties (the Plaintiffs and the putative class members on one hand and the Farm Bureau Defendants on the other hand) were (and are) indefinite and on-going or whether they were fixed and project-based as typical of independent contractors; and the nature and degree of the Farm Bureau Defendants' control over the Agents.

68. The statuses of all individuals similarly situated to the Plaintiffs raise an identical legal question: whether the Farm Bureau Defendants' Agents acted as independent contractors or employees to whom the Farm Bureau Defendants owed, owe or would owe a minimum wage, overtime, and record-keeping obligations under the FLSA.

69. The putative class meets the typicality requirement of Rule 23(a)(3) because the Plaintiffs and the putative class members were all employed by the Farm Bureau

Defendants pursuant to Agents contracts and performed their services without receiving overtime wages owed for their work.

70.  The putative class meets the fair and adequate protection requirement of Rule 23(a)(4) because there is no apparent conflict of interest between the Plaintiffs and the putative class members, and because counsel for the Plaintiffs is knowledgeable and experienced in the field of employment law, can and will fairly and competently represent the interests of all class members, and has and will commit the human and financial resources necessary to adequately represent all class members.  Furthermore, counsel for the Plaintiffs has conducted significant investigation as to potential claims and parties in this case.

71.  The putative class meets the predominance requirement of Rule 23(b)(3) because issues common to the class predominate over any questions affecting only individual members including but not limited to whether the Farm Bureau Defendants' Agents were (and are) improperly classified as independent contractors and whether the Farm Bureau Defendants, through their employment policies and practices, exercised control over the manner in which the class members worked.

72.  The putative class meets the superiority requirement of Rule 23(b)(3) because allowing the parties to resolve their controversy through a class action would permit a large number of similarly-situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort or expense that numerous individual actions would require.

73.  Even if each class member could afford to litigate a separate suit, this Court should not require the filing and prosecution of possibly one hundred or more identical

actions, given the material similarity of the putative class members' claims. Separate lawsuits of the legal and factual issues raised by the Farm Bureau Defendants' conduct and practices would cause unavoidable delay, a significant duplication of efforts, and a waste of resources. Alternatively, allowing the claims to proceed by way of a single class action would permit the efficient supervision of the putative class members' claims and would create significate economies of scale for the Court and all parties involved, resulting in uniform, binding adjudication of all issues.

74. This action can be efficiently and effectively managed by sending the same FLSA opt-in notice to all employees similarly situated.

75. The Farm Bureau Defendants are liable under the FLSA for failing to properly compensate the Plaintiffs and the other putative class members. Those similarly situated are known to the Farm Bureau Defendants and are readily identifiable through the Farm Bureau Defendants' records.

## FACTS

76. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

77. The Plaintiffs and all similarly situated individuals have all been victimized by the Farm Bureau Defendants' common policies and plans to violate their rights under the FLSA by refusing or failing to keep proper records and denying them proper overtime compensation.

78. The Farm Bureau Defendants operate an integrated business enterprise of soliciting, selling and servicing insurance and insurance-related products and services including auto insurance, homeowner's insurance, renter's insurance, manufactured home

insurance, farm & ranch insurance, property insurance, health insurance and life insurance.

79.  The Plaintiffs and the other putative class members were (and are), as a matter of economic reality, reliant upon the Farm Bureau Defendants to earn a living. They were neither self-reliant nor independent.

80.  The Plaintiffs and the other putative class members' work was (and is) an integral part of the Farm Bureau Defendants' businesses.  Their services were integrated into the Farm Bureau Defendants' business operations of soliciting, selling and servicing insurance products, which is consistent with an employee classification and not an independent contractor classification.

81.  The Plaintiffs and the other putative class members' investments into the Farm Bureau Defendants' Agencies was (and is) miniscule compared to the Farm Bureau Defendants' investments.  The Farm Bureau Defendants' investments in the infrastructure designed to underwrite, administer and pay claims of insurance products sold by the Plaintiffs and other putative class members far exceed any investment by them.

82.  The Plaintiffs and other putative class members had or have indefinite, lengthy and ongoing working relationships with the Farm Bureau Defendants and received (and/or continue to receive) promotions and advanced (and/or continue to advance) along career paths as is typical for employees.

83.  The Farm Bureau Defendants' practice has been to hire, train, promote and retain their Agents for numerous years.

84.  The Farm Bureau Defendants expected and encouraged "continuous service" by Plaintiffs and other putative class members which is typical of employment

relationships and not independent contractor relationships. This is evidenced, *inter alia*, by the fact that they tied their compensation to Plaintiffs and other putative class members to "length of continuous service." Their expectations were and are that Agents work for them for more than 5 years.

85. The Plaintiffs and other putative class members worked exclusively for the Farm Bureau Defendants for years and even decades.

86. Some putative class members were required to adjust claims in the manners detailed in the Farm Bureau Defendants' guidelines, instructions, and Agents' Manuals.

87. The Plaintiffs and the other putative class members solicited, sold and serviced, personally and through Farm Bureau-appointed agents, insurance policies exclusively from the Farm Bureau Defendants. They were prohibited from soliciting, selling and/or servicing insurance from other companies while working for the Farm Bureau Defendants unless they obtained prior written consent and authorization to do so.

88. Alternatively, the Farm Bureau Defendants limited and controlled the policies, products, and services the Plaintiffs and the other putative class members could solicit, sell and/or service, personally or through Farm Bureau-appointed agents.

89. The Plaintiffs and the other putative class members were required to consider and treat any money they received or collected as the Farm Bureau Defendants' property and were required to remit all such money "at once" to the Farm Bureau Defendants' State Office without deduction for commission, payment or claim of any kind. Alternatively, Farm Bureau customers made payments directly to the Farm Bureau Defendants for purchased services and products. They did not pay the Plaintiffs or others similarly situated for the services and products they offered.

90.  The Plaintiffs and the other putative class members were (and are) prohibited from representing any insurance company, other than a Farm Bureau insurance company, unless they first obtained the Farm Bureau Defendants' written consent to do so.

91.  The Farm Bureau Defendants prohibited the Plaintiffs and the other putative class members from claiming any right to any of the books of business they wrote for the Farm Bureau Defendants and expressly stated that the entire books of business written by their Agents, together with all rights of renewal or expiration thereof, "shall be and remain the sole and exclusive property of the [Farm Bureau] Companies."

92.   The Plaintiffs and the other putative class members were required to surrender their entire books of business to the Farm Bureau Defendants upon their termination or departure, whether voluntary or involuntary, from the Farm Bureau Defendants.

93.  The Farm Bureau Defendants claimed ownership of and prohibited the Plaintiffs and other putative class members from claiming ownership of or any right to any information regarding persons to whom they sold or serviced insurance including "all information, names, addresses and ages of policy holders and contract holders."

94.  The Farm Bureau Defendants claimed ownership of and prohibited the Plaintiffs and other putative class members from claiming ownership of or any right to "all information on any media form, including, but not limited to, memoranda, computer tapes, computer disks, computer printouts or manually produced records" whether furnished by Farm Bureau or purchased by the Plaintiffs and the other putative class members.  The Farm Bureau Defendants claimed sole and exclusive ownership and right to such information and things and prohibited the Plaintiffs and other putative class

members from copying, duplicating or reproducing any such information or thing without its prior written consent.  They also required the Plaintiffs and the other putative class members to surrender all such items at the time of their separation from the Farm Bureau Defendants (even if Plaintiff and/or the putative class members had themselves purchased the items or information).

95.    The Farm Bureau Defendants required the Plaintiffs and others similarly situated to pay commissions to their predecessors for prior work they rendered to Farm Bureau.

96.    The Farm Bureau Defendants required Plaintiff and other putative class members to authorize it to print their names and to utilize their electronic signatures on various insurance documents.

97.    The Farm Bureau Defendants expressly limited the authority of the Plaintiffs and other putative class members in a number of ways as detailed in its Agent's Contracts and in its advertising and social media policies.

98.    The Farm Bureau Defendants controlled the manner and method of payment to the Plaintiffs and other putative class members.  For example, they retained "the right to withhold payment of any or all compensation due hereunder for a period of time sufficient to give the [Farm Bureau] Companies the opportunity to determine the existence and amount of any indebtedness due, or claimed to be due, from You and other putative class members] to the Companies, to any Farm Bureau organization, or to other companies."    Likewise, they refused to recognize commissions as due and payable to Plaintiffs and other putative class members on any policy until said policy was issued and delivered to the insured and they received the first premium in their home office.  They

also reserved unto themselves the exclusive rights to fix the new and renewal commissions and to change those commissions unilaterally and at any time upon their issuance of commission schedules.

99.    The Farm Bureau Defendants controlled the hiring, firing, assignment or reassignment, and commission rates of the Plaintiffs and other similarly situated misclassified Agents.  They prohibited them from assigning any of their rights to third parties.

100.    The Farm Bureau Defendants set and/or closely monitored and effectively controlled the work, holiday and vacation schedules for the Plaintiffs and other similarly situated misclassified insurance Agents.  They required them to submit to regular evaluations where they were evaluated on production, leadership, manpower, agency development and performance, communication and business management.  They also required them to follow State Office schedules for holidays.

101.  The Farm Bureau Defendants subjected the Plaintiffs and other similarly situated Agents to annual or bi-annual evaluations. The evaluation reports are clearly indicative of an employee classification and not an independent contractor classification.  For example, the stated primary purpose for the evaluations is to aid the Farm Bureau Defendants in producing high performance in their Agents as they strive to meet individual and corporate goals.

102.  The Farm Bureau Defendants keep personnel records on their Agents and keep reports of their evaluations in their files.

103.  Additionally, the Farm Bureau Defendants regularly evaluate and grade each Agent via performance reviews.

104.    The Farm Bureau Defendants retained the right to discipline Agents for not following their company rules.

105.  The Farm Bureau Defendants tracked the days and time their Agents worked.  They set and/or controlled work hours and/or required their Agents to sign out when leaving their offices.

106.  Farm Bureau instructed their Agents regarding when, where and how they were to perform their work.  They required their Agents to conduct a certain number of reviews per year.

107.  Another example of the control the Farm Bureau Defendants exercised (and/or exercises) over the Plaintiffs and other putative class members is seen in their audit authority.  They required the Plaintiff and other putative class members to provide them with access to their books, accounts and financial records.

108.  The Farm Bureau Defendants also exercised control over the Plaintiffs and the other putative class members by requiring them to operate as limited liability companies and by prohibiting them from having more than one sole member.

109.  The Farm Bureau Defendants required the Plaintiff and other putative class members to meet sales quotas.

110.  The Farm Bureau Defendants required the Plaintiffs and other putative class members to take continuing education on business ethics and other topics through its company-based system, "Farm Bureau Tech."

111.  The Farm Bureau Defendants required the Plaintiffs and other putative class members to enter into non-compete and/or non-solicitation agreements which are typical in employment relationships but not in independent contractor relationships.

112.  The Farm Bureau Defendants required the Plaintiff and other putative class members to adhere to their codes of conduct and their requirements regarding work times, office locations, dress code, mandatory production reports, monthly Agents

meetings, quarterly district meetings, and state meetings. They determined the location of branch offices from which many of the putative class members worked and provided the physical facilities, requirements and tools for their work and regulated their behavior in their facilities.

113. The Farm Bureau Defendants monitored computer usage (including information stored, deletions, website usage, search history, and email correspondence) by the Plaintiffs and other putative class members and retained authority to block websites at their own discretion.

114. The Farm Bureau Defendants controlled signage, advertising and promotions utilized by Plaintiffs and other putative class members. If the Plaintiffs and/or the others wished to advertise and/or market, they were required to have their advertisements and/or marketing materials approved by the Farm Bureau Defendants. The Farm Bureau Defendants also controlled their Agents use of social media.

115. Similarly, the Farm Bureau Defendants provided the templates to be used on all Agents' business cards. They also either issued business cards to the Agents or required them to buy business cards through their State Office. All Agents were required to purchase or utilize business cards which identified them as Agents for Farm Bureau and contained the Farm Bureau name and logo. All Agents were also provided with Farm Bureau email addresses which they were required to use.

116. The Farm Bureau Defendants retained the right to unilaterally fire their Agents without their consent, authorization or approval.

117. The Farm Bureau Defendants required the Plaintiffs and other similarly situated Agents to comply with their document retention policies and requirements.

118.  The Farm Bureau Defendants required their Agents to sell and collect Farm Bureau Federation Memberships to customers as a prerequisite to selling them insurance products and/or services.

119.  They required them to call customers to collect past due federation memberships for them.

120.  In order to have Facebook business pages, the Plaintiffs and the other similarly situated Agents were required to pay and subscribe to "Hearsay," a Farm Bureau program that controlled postings.

121.  The Farm Bureau Defendants required the Plaintiffs and other similarly situated Agents to purchase and/or use their errors and omissions insurance.  They were prohibited from obtaining errors and omissions coverage from their competitors.

122.  The Plaintiffs and other misclassified Agents frequently and routinely worked over 8-hour work days and over 40 hours per week for each of the Defendants, South Carolina Farm Bureau Insurance Company, South Carolina Farm Bureau Mutual Insurance Company, Palmetto Casualty Insurance Company, Southern Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Life Insurance Company.

123.  The Plaintiffs and other misclassified Agents are and/or were nonexempt employees.

124.  The Farm Bureau Defendants illegally and/or wrongfully classified their insurance agents, including the Plaintiffs, as independent contractors; however, they were actually employees as that term is defined by the FSLA and relevant case law.

125.  The Farm Bureau Defendants' mischaracterization of the Plaintiffs and other similarly situated insurance Agents as independent contractors, the concealment or non-

disclosure of the true nature of the relationship between them and these Agents, and the attendant

deprivation of substantial rights and benefits of employment, including the refusal to pay

overtime wages as required by the FSLA, are part of an on-going unlawful practice by the Farm

Bureau Defendants which this Court should enjoin.

## CAUSES OF ACTION AGAINST SOUTH CAROLINA
## FARM BUREAU INSURANCE COMPANY

### COUNT I - VIOLATION OF 29 U.S.C. § 207

126.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

127.  SCFB's practice of failing to pay the Plaintiffs and other Agents similarly situated at

a time-and-a-half rate of pay for hours in excess of 40 hours per workweek violates the FLSA.

See 29 U.S.C. § 207(a)(1).

128.  None of the exemptions provided by the FLSA regulating the duty of employers to

pay overtime at a rate of not less than one and one-half times the regular rate at which its

employees are employed are applicable to SCFB or the Plaintiffs and other similarly situated

Agents.

129.  The Plaintiffs and others similarly situated were damaged in an amount to be

proved at trial as a result of SCFB's violations of 29 U.S.C. § 207.

### COUNT II - WILLFULNESS

130.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

131.  SCFB's failure to pay the Plaintiffs and other similarly situated Agents overtime as

required by the FLSA was willful and was not based on good faith and reasonable belief that its

conduct complied with the FSLA.

132.  SCFB was aware of the FLSA's requirement that all non-exempt employees be paid time-and-a-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.  It was aware that it failed to adhere to that requirement.

133.  SCFB was aware of the specific job duties of its Agents and was aware that those duties did not fit within any exemption to the FLSA's requirement for overtime pay.

134.  SCFB knew that the position of insurance Agents, as the job was intended and was performed by the Plaintiffs and other similarly situated Agents, was consistent with an employment relationship under the FLSA and controlling case law and that it was improper to classify (or, rather, misclassify) its Agents as independent contractors.

135.  SCFB knew or showed reckless disregard for the proper classification of the Plaintiffs and other similarly situated Agents when it classified them as exempt independent contractors.

136.  SCFB willfully misclassified the positions of the Plaintiffs and other similarly situated Agents as exempt.

137.  The Plaintiffs and others similarly situated were damaged in an amount to be proved at trial as a result of SCFB's willful violations of the FLSA.

## COUNT III - LIQUIDATED DAMAGES

138.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

139.  SCFB acted in bad faith when it failed to properly pay the Plaintiffs and other similarly situated Agents for their overtime work.

140.  SCFB knew or should have known that it was violating the FLSA when it failed to properly pay the Plaintiffs and other similarly situated Agents for their overtime work.

141.  Accordingly, the Plaintiffs and the other putative class members are entitled to recover double or liquidated damages from SCFB.

## COUNT IV - PUNITIVE DAMAGES

142.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

143.  SCFB's action in failing to properly pay the Plaintiffs and the other similarly situated Agents for their overtime work was willful, wanton, reckless and grossly negligent.

144.  The Plaintiffs and the other similarly situated Agents suffered damages as a result of SCFB's willful, wanton, reckless and grossly negligent failure to properly pay them the overtime pay due them.

145.  Accordingly, the Plaintiff and the other putative class members are entitled to punitive damages from SCFB.

## COUNT V - DECLARATIONS AND ATTORNEY'S FEES

146.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

147.   The Plaintiffs and other similarly situated Agents are entitled to a judicial declaration that they were and/or are employees of SCFB.  They are entitled to a judicial declaration that they were not and are not independent contractors despite SCFB's misclassifying them as such.  They are entitled to judicial declarations that SCFB's acts, policies, practices and procedures complained of herein violated provisions of the FLSA.

148.   The Plaintiffs and others similarly situated are entitled to recover their unpaid overtime compensation.

149.  The Plaintiffs and others similarly situated are entitled to additional amounts equal to their unpaid overtime compensation as liquidated damages.  See 29 U.S.C. § 216(b).

150.  The Plaintiffs and others similarly situated are entitled to recover punitive damages.

151.  The Plaintiffs and others similarly situated are entitled to recover their attorney's fees and costs.  See 29 U.S.C. § 216(b).

152.  The Plaintiffs and others similarly situated are entitled to pre- and post-judgment interest.

## CAUSES OF ACTION AGAINST SOUTH CAROLINA
## FARM BUREAU MUTUAL INSURANCE COMPANY

### COUNT I - VIOLATION OF 29 U.S.C. § 207

153.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

154.  SCFBM's practice of failing to pay the Plaintiffs and other Agents similarly situated at a time-and-a-half rate of pay for hours in excess of 40 hours per workweek violates the FLSA. See 29 U.S.C. § 207(a)(1).

155.  None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate of not less than one and one-half times the regular rate at which its employees are employed are applicable to SCFBM or Plaintiffs and other similarly situated Agents.

156.  The Plaintiff and others similarly situated were damaged in an amount to be proved at trial as a result of SCFBM's violations of 29 U.S.C. § 207.

### COUNT II - WILLFULNESS

157.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

158.  SCFBM's failure to pay the Plaintiffs and other similarly situated Agents overtime as required by the FLSA was willful and was not based on good faith and reasonable belief that its conduct complied with the FSLA.

159.  SCFBM was aware of the FLSA's requirement that all non-exempt employees be paid time-and-a-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.  It was aware that it failed to adhere to that requirement.

160.  SCFBM was aware of the specific job duties of its Agents and was aware that those duties did not fit within any exemption to the FLSA's requirement for overtime pay.

161.  SCFBM knew that the position of insurance Agents, as the job was intended and was performed by the Plaintiff and other similarly situated Agents, was consistent with an employment relationship under the FLSA and controlling case law and that it was improper to classify (or, rather, misclassify) its Agents as independent contractors.

162.  SCFBM knew or showed reckless disregard for the proper classification of the Plaintiffs and other similarly situated Agents when it classified them as exempt independent contractors.

163.  SCFBM willfully misclassified the positions of the Plaintiffs and other similarly situated Agents as exempt.

164.  The Plaintiffs and others similarly situated were damaged in an amount to be proved at trial as a result of SCFBM's willful violations of the FLSA.

## COUNT III - LIQUIDATED DAMAGES

165.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

166.  SCFBM acted in bad faith when it failed to properly pay the Plaintiffs and other similarly situated Agents for their overtime work.

167.  SCFBM knew or should have known that it was violating the FLSA when it failed to properly pay the Plaintiffs and other similarly situated Agents for their overtime work.

168.  Accordingly, the Plaintiff and the other putative class members are entitled to recover double or liquidated damages from SCFBM.

### COUNT IV - PUNITIVE DAMAGES

169.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

170.  SCFBM's action in failing to properly pay the Plaintiffs and the other similarly situated Agents for their overtime work was willful, wanton, reckless and grossly negligent.

171.  The Plaintiffs and the other similarly situated Agents suffered damages as a result of SCFBM's willful, wanton, reckless and grossly negligent failure to properly pay them the overtime pay due them.

172.  Accordingly, the Plaintiffs and the other putative class members are entitled to punitive damages from SCFBM.

### COUNT V - DECLARATIONS ANDATTORNEY'S FEES

173.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

174.   The Plaintiffs and other similarly situated Agents are entitled to a judicial declaration that they were and/or are employees of SCFBM.  They are entitled to a judicial declaration that they were not and are not independent contractors despite SCFBM's misclassifying them as such.  They are entitled to judicial declarations that SCFBM's acts, policies, practices and procedures complained of herein violated provisions of the FLSA.

175.   The Plaintiffs and others similarly situated are entitled to recover their unpaid overtime compensation.

176.  The Plaintiffs and others similarly situated are entitled to additional amounts equal to their unpaid overtime compensation as liquidated damages.  See 29 U.S.C. § 216(b).

177.  The Plaintiffs and others similarly situated are entitled to recover punitive damages.

178.  The Plaintiffs and others similarly situated are entitled to recover their attorney's fees and costs.  See 29 U.S.C. § 216(b).

179.  The Plaintiffs and others similarly situated are entitled to pre- and post-judgment interest.

**CAUSES OF ACTION AGAINST**
**PALMETTO CASUALTY INSURANCE COMPANY**

**COUNT I - VIOLATION OF 29 U.S.C. § 207**

180.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

181.  PCI's practice of failing to pay the Plaintiffs and other Agency Mangers similarly situated at a time-and-a-half rate of pay for hours in excess of 40 hours per workweek violates the FLSA.  See 29 U.S.C. § 207(a)(1).

182.  None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate of not less than one and one-half times the regular rate at which its employees are employed are applicable to PCI or the Plaintiffs and other similarly situated Agents.

183.  The Plaintiffs and others similarly situated were damaged in an amount to be proved at trial as a result of PCI's violations of 29 U.S.C. § 207.

**COUNT II - WILLFULNESS**

184.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

185.  PCI's failure to pay the Plaintiffs and other similarly situated Agents overtime as required by the FLSA was willful and was not based on good faith and reasonable belief that its conduct complied with the FSLA.

186.  PCI was aware of the FLSA's requirement that all non-exempt employees be paid time-and-a-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.  It was aware that it failed to adhere to that requirement.

187.  PCI was aware of the specific job duties of its Agents and was aware that those duties did not fit within any exemption to the FLSA's requirement for overtime pay.

188.  PCI knew that the position of insurance Agent, as the job was intended and was performed by the Plaintiffs and other similarly situated Agents, was consistent with an employment relationship under the FLSA and controlling case law and that it was improper to classify (or, rather, misclassify) its Agents as independent contractors.

189.  PCI knew or showed reckless disregard for the proper classification of the Plaintiffs and other similarly situated Agents when it classified them as exempt independent contractors.

190.  PCI willfully misclassified the positions of the Plaintiffs and other similarly situated Agents as exempt.

191.  The Plaintiffs and others similarly situated were damaged in an amount to be proved at trial as a result of PCI's willful violations of the FLSA.

## COUNT III - LIQUIDATED DAMAGES

192.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

193.  PCI acted in bad faith when it failed to properly pay the Plaintiffs and other similarly situated Agents for their overtime work.

194.  PCI knew or should have known that it was violating the FLSA when it failed to properly pay the Plaintiffs and other similarly situated Agents for their overtime work.

195.  Accordingly, the Plaintiffs and the other putative class members are entitled to recover double or liquidated damages from PCI.

## COUNT IV - PUNITIVE DAMAGES

196.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

197.  PCI's action in failing to properly pay the Plaintiffs and the other similarly situated Agents for their overtime work was willful, wanton, reckless and grossly negligent.

198.  The Plaintiffs and the other similarly situated Agents suffered damages as a result of PCI's willful, wanton, reckless and grossly negligent failure to properly pay them the overtime pay due them.

199.  Accordingly, the Plaintiffs and the other putative class members are entitled to punitive damages from PCI.

## COUNT V - DECLARATIONS AND ATTORNEY'S FEES

200.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

201.  The Plaintiffs and other similarly situated Agents are entitled to a judicial declaration that they were and/or are employees of PCI.  They are entitled to a judicial declaration that they were not and are not independent contractors despite PCI's misclassifying them as such.  They are entitled to judicial declarations that PCI's acts, policies, practices and procedures complained of herein violated provisions of the FLSA.

202.  The Plaintiffs and others similarly situated are entitled to recover their unpaid overtime compensation.

203.  The Plaintiffs and others similarly situated are entitled to additional amounts equal to their unpaid overtime compensation as liquidated damages.  See 29 U.S.C. § 216(b).

204.  The Plaintiffs and others similarly situated are entitled to recover punitive damages.

205.  The Plaintiff and others similarly situated are entitled to recover their attorney's fees and costs.  See 29 U.S.C. § 216(b).

## CAUSES OF ACTION AGAINST
## SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY

### COUNT I - VIOLATION OF 29 U.S.C. § 207

206.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

207.  SFBC's practice of failing to pay the Plaintiffs and other Agency Mangers similarly situated at a time-and-a-half rate of pay for hours in excess of 40 hours per workweek violates the FLSA.  See 29 U.S.C. § 207(a)(1).

208.  None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate of not less than one and one-half times the regular rate at which its employees are employed are applicable to SFBC or the Plaintiffs and other similarly situated Agents.

209.  The Plaintiffs and others similarly situated were damaged in an amount to be proved at trial as a result of SFBC's violations of 29 U.S.C. § 207.

### COUNT II - WILLFULNESS

210.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

211.  SFBC's failure to pay the Plaintiffs and other similarly situated Agents overtime as required by the FLSA was willful and was not based on good faith and reasonable belief that its conduct complied with the FSLA.

212.  SFBC was aware of the FLSA's requirement that all non-exempt employees be paid time-and-a-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.  It was aware that it failed to adhere to that requirement.

213.  SFBC was aware of the specific job duties of its Agents  and was aware that those duties did not fit within any exemption to the FLSA's requirement for overtime pay.

214.  SFBC knew that the position of insurance Agent, as the job was intended and was performed by the Plaintiffs and other similarly situated Agents, was consistent with an employment relationship under the FLSA and controlling case law and that it was improper to classify (or, rather, misclassify) its Agents as independent contractors.

215.  SFBC knew or showed reckless disregard for the proper classification of the Plaintiffs and other similarly situated Agents  when it classified them as exempt independent contractors.

216.  SFBC willfully misclassified the positions of the Plaintiffs and other similarly situated Agents as exempt.

217.  The Plaintiffs and others similarly situated were damaged in an amount to be proved at trial as a result of SFBC's willful violations of the FLSA.

## COUNT III - LIQUIDATED DAMAGES

218.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

219.  SFBC acted in bad faith when it failed to properly pay the Plaintiffs and other similarly situated Agents for their overtime work.

220.  SFBC knew or should have known that it was violating the FLSA when it failed to properly pay the Plaintiffs and other similarly situated Agents for their overtime work.

221.  Accordingly, the Plaintiffs and the other putative class members are entitled to recover double or liquidated damages from SFBC.

## COUNT IV - PUNITIVE DAMAGES

222.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

223.  SFBC's action in failing to properly pay the Plaintiffs and the other similarly situated Agents for their overtime work was willful, wanton, reckless and grossly negligent.

224.  The Plaintiffs and the other similarly situated Agents suffered damages as a result of SFBC's willful, wanton, reckless and grossly negligent failure to properly pay them the overtime pay due them.

225.  Accordingly, the Plaintiffs and the other putative class members are entitled to punitive damages from SFBC.

## COUNT V - DECLARATIONS AND ATTORNEY'S FEES

226.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

227.  The Plaintiffs and other similarly situated Agents are entitled to a judicial declaration that they were and/or are employees of SFBC.  They are entitled to a judicial declaration that they were not and are not independent contractors despite SFBC's misclassifying them as such.  They are entitled to judicial declarations that SFBC's acts, policies, practices and procedures complained of herein violated provisions of the FLSA.

228.  The Plaintiffs and others similarly situated are entitled to recover their unpaid overtime compensation.

229.  The Plaintiffs and others similarly situated are entitled to additional amounts equal to their unpaid overtime compensation as liquidated damages.  See 29 U.S.C. § 216(b).

230.  The Plaintiffs and others similarly situated are entitled to recover punitive damages.

231.  The Plaintiffs and others similarly situated are entitled to recover their attorney's fees and costs.  See 29 U.S.C. § 216(b).

232.  The Plaintiffs and others similarly situated are entitled to pre- and post-judgment interest.

## CAUSES OF ACTION AGAINST
## SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY

### COUNT I - VIOLATION OF 29 U.S.C. § 207

234.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

235.  SFBL's practice of failing to pay the Plaintiffs and other Agents similarly situated at a time-and-a-half rate of pay for hours in excess of 40 hours per workweek violates the FLSA. See 29 U.S.C. § 207(a)(1).

236.  None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate of not less than one and one-half times the regular rate at which its employees are employed are applicable to SFBL or Plaintiff and other similarly situated Agents.

237.  The Plaintiffs and others similarly situated were damaged in an amount to be proved at trial as a result of SFBL's violations of 29 U.S.C. § 207.

### COUNT II - WILLFULNESS

238.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

239.  SFBL's failure to pay the Plaintiffs and other similarly situated Agents overtime as required by the FLSA was willful and was not based on good faith and reasonable belief that its conduct complied with the FSLA.

240.  SFBL was aware of the FLSA's requirement that all non-exempt employees be paid time-and-a-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek.  It was aware that it failed to adhere to that requirement.

241.  SFBL was aware of the specific job duties of its Agents and was aware that those duties did not fit within any exemption to the FLSA's requirement for overtime pay.

242.  SFBL knew that the position of insurance Agent, as the job was intended and was performed by the Plaintiffs and other similarly situated Agents, was consistent with an

employment relationship under the FLSA and controlling case law and that it was improper to classify (or, rather, misclassify) its Agents as independent contractors.

243.    SFBL knew or showed reckless disregard for the proper classification of the Plaintiffs and other similarly situated Agents when it classified them as exempt independent contractors.

244.    SFBL willfully misclassified the positions of the Plaintiffs and other similarly situated Agents as exempt.

245.    The Plaintiffs  and others similarly situated were damaged in an amount to be proved at trial as a result of SFBL's willful violations of the FLSA.

### COUNT III - LIQUIDATED DAMAGES

246.    The foregoing paragraphs are incorporated herein as if set forth in their entirety.

247.    SFBL acted in bad faith when it failed to properly pay the Plaintiff and other similarly situated Agents for their overtime work.

248.    SFBL knew or should have known that it was violating the FLSA when it failed to properly pay the Plaintiffs and other similarly situated Agents for their overtime work.

249.    Accordingly, the Plaintiffs and the other putative class members are entitled to recover double or liquidated damages from SFBL.

### COUNT IV - PUNITIVE DAMAGES

250.    The foregoing paragraphs are incorporated herein as if set forth in their entirety.

251.    SFBL's action in failing to properly pay the Plaintiffs and the other similarly situated Agents for their overtime work was willful, wanton, reckless and grossly negligent.

252.  The Plaintiffs and the other similarly situated Agents suffered damages as a result of SFBL's willful, wanton, reckless and grossly negligent failure to properly pay them the overtime pay due them.

253.  Accordingly, the Plaintiffs and the other putative class members are entitled to punitive damages from SFBL.

## COUNT V - DECLARATIONS AND ATTORNEY'S FEES

254.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

255.  The Plaintiffs and other similarly situated Agents are entitled to a judicial declaration that they were and/or are employees of SFBL.  They are entitled to a judicial declaration that they were not and are not independent contractors despite SFBL's misclassifying them as such.  They are entitled to judicial declarations that SFBL's acts, policies, practices and procedures complained of herein violated provisions of the FLSA.

256.  The Plaintiffs and others similarly situated are entitled to recover their unpaid overtime compensation.

257.  The Plaintiffs and others similarly situated are entitled to additional amounts equal to their unpaid overtime compensation as liquidated damages.  See 29 U.S.C. § 216(b).

258.  The Plaintiffs and others similarly situated are entitled to recover punitive damages.

259.  The Plaintiffs and others similarly situated are entitled to recover their attorney's fees and costs.  See 29 U.S.C. § 216(b).

260.  The Plaintiffs and others similarly situated are entitled to pre- and post-judgment interest.

## PRAYER FOR RELIEF

261.    For these reasons, the Plaintiffs respectfully request the following relief for themselves and on behalf of all members of the Class Action, and all other similarly situated individuals:

a. That the Court certify the putative class named in this Complaint as an opt-in collective and class action under 29 U.S.C. § 216(b) and Rule 23 of the Federal Rules of Civil Procedure and enter an order allowing this action to proceed as a collective and class action under said authorities;

b. That the Court declare the rights and duties of the parties consistent with the relief sought herein;

c. That the Court issue a declaratory judgment that each Defendant's acts, policies, practices, and procedures complained of herein violated provisions of the FLSA;

d. That the Court enjoin the Defendants from committing further violation of the FLSA;

e. That the Court award the Plaintiff and the other putative class members overtime compensation for all hours worked over 40 hours in a workweek at the applicable time-and-a-half rate;

f. That the Court award the Plaintiffs and the other putative class members equal amounts of all owed wages as liquidated damages as allowed under the FLSA;

g. That the Court award the Plaintiffs and the other putative class members an appropriate amount of punitive damages;

h. That the Court award the Plaintiffs and the other putative class members' reasonable attorney's fees, costs, pre-judgment interest, post-judgment interest and expenses;

i. That the Court award appropriate incentive awards for any class representatives; and

j. That the Court award the Plaintiffs and the putative class members such additional relief as the interests of justice may require.

. (SIGNATURE PAGE FOLLOWS)

RESPECTFULLY SUBMITTED,

GAFFNEY LEWIS & EDWARDS, LLC

s/ Amy L. Gaffney_____
Amy L. Gaffney
Federal I.D. Number:  6316
Regina Hollins Lewis
Federal I.D. Number:  7553
Susan Rawls Strom
Federal I.D. Number:  7971
Gaffney Lewis & Edwards, LLC
3700 Forest Drive, Suite 400
Columbia, SC  29204
(803) 790-8838
(803) 790-8841—facsimile
agaffney@glelawfirm.com

YARBOROUGH APPLEGATE LLC
David B. Yarborough, Jr.
Federal I.D. Number:  7336
William E. Applegate, IV
Federal I.D. Number:  9261
Christopher J. Bryant
Federal I.D. Number:  12538
291 East Bay Street
Charleston, SC  29401
(843) 972-0150
(843) 277-6691 –facsimile
david@yarboroughapplegate.com
william@yarboroughapplegate.com
chris@yarboroughapplegate.com

**ATTORNEYS FOR STEVEN LANEY AND
ALEXANDROS STELLER, Individually and on
behalf of others similarly situated**

**OF COUNSEL**:

**CLAYTON O'DONNELL, PLLC
S. Ray Hill, III**
P. O. Drawer 676
Oxford, MS 38655
(662) 234-0900
(662) 234-0900 - facsimile
rhill@claytonodonnell.com

41

**CLAYTON O'DONNELL, PLLC**
**Dana G. Dearman**
P. O. Box 755
Tupelo, MS 38802-0755
(662) 620-7938
(662) 620-7939 - facsimile
ddearman@claytonodonnell.com


October 8th, 2018