## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

**STEVEN LANEY and ALEXANDROS STELLER,**
**Individually and on behalf of all**
**Others similarly situated**

### PLAINTIFFS

**VS.**                                           **CIVIL ACTION NO:  3:18-02730-TLW**

**SOUTH CAROLINA FARM BUREAU**
**INSURANCE COMPANY, SOUTH**
**CAROLINA FARM BUREAU**
**MUTUAL INSURANCE COMPANY,**
**PALMETTO CASUALTY INSURANCE**
**COMPANY, SOUTHERN FARM BUREAU**
**CASUALTY INSURANCE COMPANY,**
**SOUTHERN FARM BUREAU LIFE**
**INSURANCE COMPANY**

### DEFENDANTS

### FIRST AMENDED COMPLAINT
### FOR DECLARATORY JUDGMENT AND DAMAGES

**COME NOW** Steven Laney and Alexandros Steller (collectively "Plaintiffs"),

individually and as representatives of all persons similarly situated, and bring this action against

Defendants South Carolina Farm Bureau Insurance Company ["SCFB"], South Carolina Farm

Bureau Mutual Insurance Company ["SCFBM"], Palmetto Casualty Insurance Company ["PCI"],

Southern Farm Bureau Casualty Insurance Company ["SFBC"], and Southern Farm Bureau Life

Insurance Company ["SFBL"], an integrated enterprise that jointly employed the Plaintiffs and

employed and/or employs other similarly situated individuals, [hereinafter referred to

collectively as "the Defendants"].

## INTRODUCTION

1.  This is a civil action for violations of the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* [hereinafter "FLSA"].  The Plaintiffs bring this action on behalf of themselves and on behalf of all individuals similarly situated who work or worked as insurance agents ("Agents") for the Defendants pursuant to contract and are or were misclassified as independent contractors when, in fact, they are or were nonexempt employees.

2.  The Plaintiffs bring this action on behalf of themselves and on behalf of all of those similarly situated, seeking to recover payment of wages lost or unpaid back wages, liquidated damages, reasonable attorneys' fees, costs of prosecution of this action, and pre- and post-judgment interest.

3.  This case implicates the Defendants' policies of misclassifying employees as independent contractors in an effort to avoid overtime pay liability under the FLSA.  Each of the Defendants misclassified the Plaintiffs and others similarly situated and then required or permitted them to work as Agents in excess of 40 hours per week without paying or compensating them for their overtime hours.

4.  In addition to misclassifying Agent employees as independent contractors and requiring or allowing them to work in excess of 40 hours per week, the Defendants also refused or failed to keep proper records of hours worked as required by the FLSA and refused or failed to compensate the Plaintiffs and others similarly situated for their overtime work at the applicable overtime rate of pay.  The Defendants still continue these wrongful and unlawful practices at the expense of and to the detriment of their Agents.

5.   The Defendants' conduct violates the FLSA which requires employers to keep proper records of hours worked and to compensate nonexempt employees for their overtime work at a minimum rate of one and one-half times their regular rate of pay.  See 29 U.S.C. § 207(a).

6.   The Plaintiffs seek certification of this suit as a collective action on behalf of all current and former misclassified Agents of the Defendants in locations throughout South Carolina.

## THE PARTIES

7.   The foregoing paragraphs are incorporated herein as if set forth in their entirety.

8.   Steven Laney resides at 311 McDonald Place, Bishopville, South Carolina 29010. Laney began his career with the Defendants when he was hired as an Agent in Sumter, South Carolina in July 1999.  He worked in that capacity until December 31, 2016, when the Defendants terminated his Agent contracts.  During all applicable times, Laney regularly worked as an Agent in excess of 40 hours per week.  However, the Defendants misclassified him as an independent contractor in an effort to avoid liability under the FLSA and refused or failed to pay him overtime pay.

9.   Alexandros Steller resides at 3601 Dwyer Lane, Aiken, SC 29801, South Carolina 29801.  Steller began his career with the Defendants when he was hired as an Agent in Aiken, South Carolina in February of 2006.  He worked in that capacity until February of 2018, when the Defendants terminated his Agent contracts.  During all applicable times, Steller  regularly worked as an Agent in excess of 40 hours per week.  However, the Defendants misclassified him as an independent contractor in an effort to avoid liability under the FLSA and refused or failed to pay him overtime pay.

10. Defendant South Carolina Farm Bureau Insurance Company ["SCFB"] is a South Carolina Corporation.  It may be served with process through service upon its registered agent, William O. Courtney, Jr., 724 Knox Abbott Drive, Cayce, SC 29033.

11.  Defendant South Carolina Farm Bureau Mutual Insurance Company ["SCFBM"] is a South Carolina Corporation.  It may be served with process through service upon its designated agent, the South Carolina Insurance Commission.

12. Defendant Palmetto Casualty Insurance Company ["PCI"] is a South Carolina Corporation.  It may be served with process through service upon its registered agent, John G. Richards, 1612 Marion Street, Columbia, SC 29201.

13. Defendant Southern Farm Bureau Casualty Insurance Company is a Mississippi Corporation.  It may be served with process through service upon its registered agent, Steve W. Ingram, 1800 East County Line Road, Ridgeland, Mississippi 39157.

14. Defendant Southern Farm Bureau Life Insurance Company is a Mississippi Corporation.  It may be served with process through service upon its registered agent, Corporation Service Company, 5760 I-55 North, Suite 150, Jackson, Mississippi 39211.

## JURISDICTION AND VENUE

15.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

16.  This Court has jurisdiction over the claims asserted in this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because the claims arise under the FLSA.

17.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1337 (jurisdiction over civil actions arising under any Act of Congress regulating commerce) 29 U.S.C. § 216(b) (jurisdiction over action to recover liability prescribed under the FLSA), 28 U.S.C. § 2201 (the Federal Declaratory Judgment Act), and Rule 57 of the Federal Rules of Civil Procedure.

4

18.  Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the FLSA claims occurred within this district.

## ENTERPRISE AND JOINT EMPLOYMENT

19.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

20.  The Defendants are an integrated enterprise, each of which jointly employed the Plaintiffs and those similarly situated.

21.  The Defendants constitute a single enterprise under 29 U.S.C. § 203(r) because they are an integrated enterprise and/or perform related activities for a common business purpose. There is an interrelation between their operations, and they have common management, common ownership or financial control and centralized control of labor relations.  The Defendants had control over employment practices and decisions related to the Plaintiffs and to others similarly situated.  They continue to have control over employment practices and decisions related to Agents.

22. The provisions regarding Agent responsibilities in the Defendants' Agent Contracts are good examples of the integration of the Farm Bureau entities and the integration of their operations and practices.  For example, Agents are required to perform services in accordance with "the Farm Bureau Insurance Companies Agents Manual." Any of the "Farm Bureau" companies are allowed to place a "first lien" on compensation due the Agents.

23.  Other examples are readily available on the Defendants' websites wherein they refer to themselves and/or related entities generically as "Farm Bureau."

24.  A LinkedIn account is maintained in the generic name of "Farm Bureau Insurance of South Carolina."  The integrated enterprise made up of the Defendants refers to itself as "Farm

Bureau Insurance of South Carolina" and "Farm Bureau Insurance" in its LinkedIn postings and uses the "Farm Bureau" trademark in photos posted on its LinkedIn account pages.

25.    Additionally, although their contracts are presumably with specific "Farm Bureau" companies, Farm Bureau Agents and Agency Managers market themselves as "Farm Bureau" and "SC Farm Bureau Insurance" Agents and Agency Managers.  They also market themselves as "South Carolina Farm Bureau Insurance Companies."

26.    The Defendants engaged (and continue to engage) in activities related to soliciting, selling and servicing insurance policies under the Farm Bureau aegis.  The Defendants utilized (and continue to utilize) the same agency force for the soliciting, selling and servicing of their insurance products in South Carolina.

27.    The Defendants worked (and continue to work) together to offer insurance products and services under a single Farm Bureau identity.

28.    The Defendants shared (and continue to share) a unified, advertising mark (logo).  In fact, the Defendants share the exact same "Advertising Policy" and "Social Media Policy and Guidelines."

29.    The Defendants jointly utilized (and continue to utilize) a shared method of compensating Agents.

30.    The Defendants, formally or as a matter of practice, jointly determined, shared or allocated the ability to direct, control and supervise the Plaintiffs and other misclassified Agents, by both direct and indirect means.  The Defendants exert control over their agency force's advertising and use of Facebook and other social media forums.  They continue to jointly determine, share or allocate the ability to direct, control and supervise other misclassified Agents.

31.  By way of example, Farm Bureau Agents are managed and supervised by Agency Managers.  In turn, District Managers, who were themselves managed and supervised by the Vice President of Sales, managed and supervised (and continue to manage and supervise) Agency Managers and were (and continue to be) responsible for all of the marketing efforts such as advertising and sales promotions for all product lines sold by the Farm Bureau entities.

32.  By way of an additional example and as indicated above, the Defendants share the same advertising and social media policies and guidelines. In one of the Defendants' publications governing advertising and social media use by South Carolina Agents, Defendants expressly referred to themselves as "associated companies" and as "The Farm Bureau family of companies."  There, the Defendants also represented (and admitted) that they utilize a common agency force to market their products.

33.  The Defendants, formally or as a matter of practice, jointly determined, shared and/or allocated the power, directly or indirectly, to hire and fire the Plaintiff and other misclassified Agents or to modify the terms and conditions of their employment.

34.  For example, the Plaintiffs and other misclassified employees were subject to employment-related agreements with the Defendants whereby the Defendants misclassified them as independent contractors. These agreements required them to follow guidelines, instructions and rules contained within the Defendants' rate books, compliance manuals, guidelines and other documents, all of which were subject to change at the Defendants' sole discretion.    The same agreements reserved the Defendants' right to terminate the Plaintiffs and the other misclassified employees. The Defendants continue to utilize these practices with regard to Agency Managers throughout the state of South Carolina.

35.  The relationships between the Farm Bureau entities are permanent and longstanding.

7

36. The Farm Bureau entities operate subject to common management, supervision and control.

37. The Plaintiffs and other misclassified Agents day-to-day experience was that South Carolina Farm Bureau (a/k/a "Farm Bureau Insurance of South Carolina") was their employer. They, along with supervisors and agents, were considered to be working for "South Carolina Farm Bureau" (a/k/a "Farm Bureau Insurance of South Carolina"). The Defendants managed the Plaintiffs and other misclassified Agents concerning all lines of Farm Bureau insurance sold, including all South Carolina Farm Bureau lines as well as casualty and life lines sold by South Carolina Farm Bureau Insurance Company, South Carolina Farm Bureau Mutual Insurance Company, Palmetto Casualty Insurance Company, Southern Farm Bureau Casualty Insurance Company, and Southern Farm Bureau Life Insurance Company. The Defendants still continue these practices with regard to its Agents.

38. The Defendants paid the Plaintiffs and other misclassified Agents. During part of the Plaintiffs' tenure with the Defendants, the Defendants supplied them and other Agents (both past and current) with facilities, computers and office supplies which the Plaintiffs and other Agents similarly situated used for all of their work for Farm Bureau, including soliciting, selling and servicing policies issued by each of the Farm Bureau companies. During other parts of the Plaintiffs' tenure with the Defendants, the Defendants required them and other Agents similarly situated to rent their office spaces from their specific County Farm Bureau entities and to pay for utilities and secretaries.

39. The Defendants set "service fees" for the Plaintiffs and for other similarly situated Agents. The "service fees" were actually the operating budgets for the county offices. They also

required members of their agency force to pay other fees – for example, a portion of the overall

cost of their social media forum, "Hearsay Social."

## FLSA COVERAGE

40.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

41. The Plaintiffs bring this Complaint as a collective and class action, alleging violations

of the FLSA on behalf of themselves and all similarly situated individuals.  The putative class is

defined as:

> All individuals who, through a contract or agreement with any of the Farm Bureau
> entities, perform or performed as Agents for any of the Farm Bureau entities and
> who were classified by the Farm Bureau entities (or, rather, misclassified by the
> Farm Bureau entities) as "independent contractors" anywhere in the state of South
> Carolina at any time from the date that is three years preceding the
> commencement of this action through the close of the Court-determined opt-in
> period and who file a consent to join in this action.

The putative class also includes the Plaintiffs, and they reserve the right to modify this

definition prior to conditional certification of the putative class.

42. The Plaintiffs, along with current and former misclassified Agents of the

Defendants, are similarly situated in that they have or had substantially similar job

requirements and pay provisions and are or were subject to the Defendants' common

practices, policies and/or plans controlling their daily job functions.

43.  At all material times, the Defendants were employers within the meaning of

the FLSA.  See 26 U.S.C. § 3121(h) and 29 U.S.C. § 203(d).

44.  The Defendants controlled the nature, pay structure, and employment

relationship with the Plaintiffs and all Agents similarly situated.

45.  The Defendants have and/or had the authority to hire and fire Agents and the

authority to direct, supervise and manage the work of Agents.  During the Plaintiffs'

tenure with the Defendants, the Defendants had the authority to sign on the companies' checking accounts, including payroll accounts. The Defendants also had the authority to make decisions regarding the Plaintiffs and similarly situated Agents compensation and capital expenditures. The Defendants' State Office set the Plaintiffs and other Agent's compensation and could change the manner of compensation at any time.

46. Additionally, the Defendants were responsible for the day-to-day affairs of all of the Farm Bureau agencies. In particular, they were responsible for determining whether they complied with the FLSA.

47. As such, the Defendants acted directly or indirectly in the interest of the employment of the Plaintiffs and other Agents (both former and current) as their employers, which make them liable under the FLSA.

48. Furthermore, at all material times, the Defendants constituted an integrated enterprise engaged in interstate commerce or in the production of goods or services for interstate commerce because they have or have had employees engaged in interstate commerce.

49. Each of the Defendants acted in related activities performed through a unified operation and common control for a common business purpose (i.e., to solicit, sell and service insurance policies to customers in South Carolina under the Farm Bureau aegis).

50. The Defendants have had, and continue to have, annual gross volumes of sales made or done of not less than $500,000.00. See 29 U.S.C. § 203(s)(1).

## COLLECTIVE ACTION ALLEGATIONS

51. The foregoing paragraphs are incorporated herein as if set forth in their entirety.

52. The Plaintiffs bring this action pursuant to the FLSA, 29 U.S.C. § 216(b) (and other applicable statutes, laws and common law) on their own behalf and on behalf of the putative class described hereinabove.

53. The Plaintiffs do not bring this action on behalf of any executive, administrative or professional employee exempt from coverage under the FLSA.

54. A collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the Agents described are "similarly situated" to the Plaintiffs. The employees on behalf of whom the Plaintiffs bring this collective action are similarly situated because they have been or are employed in the same or similar positions; they were or are subject to the same or similar wrongful and unlawful practices, policies and/or plans; and their claims are based upon the same legal theories.

55. The Plaintiffs estimate that the collective class, including both current and former Agents over the relevant period, will include well over 400 members. The precise number of collective class members should be readily available from a review of the Farm Bureau Defendants' records and from input received from the collective class members as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

56. The Plaintiffs and the putative class members' entitlement to overtime pay, except for the amounts, are identical and depend on one uniform factual question regarding whether, as a matter of economic reality, the Plaintiffs and the putative class members are or were reliant on the Farm Bureau Defendants to earn a living or are or were in business for themselves.

57. Similarly, the classification status of the Plaintiffs and the putative class members involve an identical legal question regarding whether the Farm Bureau

Defendants' Agents acted as employees, and not independent contractors, such that the Defendants owed (and owe) them a minimum wage, overtime and record-keeping obligations under the FLSA.

58.   The Plaintiffs and the putative class members share the same interest in that the outcome of this action will determine whether they were (or are) either independent contractors or employees under the FLSA.  Because the facts in each case are similar, if not altogether identical, the factual assessment and legal standards lend themselves to a collective action.

## FACTS

59.    The foregoing paragraphs are incorporated herein as if set forth in their entirety.

60.   The Plaintiffs and all similarly situated individuals have all been harmed by the Defendants' common policies and plans to violate their rights under the FLSA by refusing or failing to keep proper records and denying them proper overtime compensation.

61.   Specifically, the Plaintiffs, and those similarly situated, were required to start their work day at 8:00 am and work to 6:00 pm or 6:30 pm Monday through Friday.  As such, at a minimum, the Plaintiffs and those similarly situated worked in excess of 50 hours a week.

62.   The Plaintiffs, and those similarly situated, were often required to inspect property before the work day began, and were encouraged to schedule meetings with prospective insureds after regularly scheduled work hours.  On weeks such as this, the Plaintiffs and those similarly situated were required to work over 60 hours a week.

12

63. The Defendants held several "contests" over the work year to force Agents to meet or exceed pre-set production goals. In the weeks leading up to the end of a contest, Agents were therefore forced to work into the late evenings.  During these weeks, the Plaintiffs and those similarly situated worked well over 60 hours a week.

64. The Plaintiffs. and those similarly situated, were required to attend annual Farm Bureau meetings, which forced them to work well over 12 hours in one day.

65. In 2016, the Defendants began a re-inspection of all property insured with Farm Bureau. This was very time consuming and required the Agents, and those similarly situated, to assist with this process.   During this re-inspection period, the Plaintiffs, and those similarly situated, were required to work well over 60 hours in a work week.

66. The Defendants operate an integrated business enterprise of soliciting, selling and servicing insurance and insurance-related products and services including auto insurance, homeowner's insurance, renter's insurance, manufactured home insurance, farm & ranch insurance, property insurance, health insurance and life insurance.

67. The Plaintiffs and the other putative class members were (and are), as a matter of economic reality, reliant upon the Defendants to earn a living.  They were neither self-reliant nor independent.

68. The Plaintiffs and the other putative class members' work was (and is) an integral part of the Defendants' businesses.  Their services were integrated into the Defendants' business operations of soliciting, selling and servicing insurance products, which is consistent with an employee classification and not an independent contractor classification.

13

69. The Plaintiffs and the other putative class members' investments into the Defendants' Agencies was (and is) miniscule compared to the Defendants' investments. The Defendants' investments in the infrastructure designed to underwrite, administer and pay claims of insurance products sold by the Plaintiffs and other putative class members far exceed any investment by them.

70. The Plaintiffs and other putative class members had or have indefinite, lengthy and ongoing working relationships with the Defendants and received (and/or continue to receive) promotions and advanced (and/or continue to advance) along career paths as is typical for employees.

71. The Defendants' practice has been to hire, train, promote and retain their Agents for numerous years.

72. The Defendants expected and encouraged "continuous service" by Plaintiffs and other putative class members which is typical of employment relationships and not independent contractor relationships. This is evidenced, *inter alia*, by the fact that they tied their compensation to Plaintiffs and other putative class members to "length of continuous service." Their expectations were and are that Agents work for them for more than 5 years.

73. The Plaintiffs and other putative class members worked exclusively for the Defendants for years and even decades.

74. Some putative class members were required to adjust claims in the manners detailed in the Defendants' guidelines, instructions, and Agents' Manuals.

75. The Plaintiffs and the other putative class members solicited, sold and serviced, personally and through Farm Bureau-appointed agents, insurance policies

exclusively from the Defendants. They were prohibited from soliciting, selling and/or servicing insurance from other companies while working for the Defendants unless they obtained prior written consent and authorization to do so. Further, The Plaintiffs and the other putative class members were (and are) prohibited from representing any insurance company, other than a Farm Bureau insurance company, unless they first obtained the Defendants' written consent to do so

76. Alternatively, the Defendants limited and controlled the policies, products, and services the Plaintiffs and the other putative class members could solicit, sell and/or service, personally or through Farm Bureau-appointed agents.

77. The Plaintiffs and the other putative class members were required to consider and treat any money they received or collected as the Defendants' property and were required to remit all such money "at once" to the Defendants' State Office without deduction for commission, payment or claim of any kind. Alternatively, Farm Bureau customers made payments directly to the Defendants for purchased services and products. They did not pay the Plaintiffs or others similarly situated for the services and products they offered.

78. The Defendants prohibited the Plaintiffs and the other putative class members from claiming any right to any of the books of business they wrote for the Defendants and expressly stated that the entire books of business written by their Agents, together with all rights of renewal or expiration thereof, "shall be and remain the sole and exclusive property of the [Farm Bureau] Companies."

79. The Plaintiffs and the other putative class members were required to surrender their entire books of business to the Defendants upon their termination or departure, whether voluntary or involuntary, from the Defendants.

80. The Defendants claimed ownership of and prohibited the Plaintiffs and other putative class members from claiming ownership of or any right to any information regarding persons to whom they sold or serviced insurance including "all information, names, addresses and ages of policy holders and contract holders."

81. The Defendants claimed ownership of and prohibited the Plaintiffs and other putative class members from claiming ownership of or any right to "all information on any media form, including, but not limited to, memoranda, computer tapes, computer disks, computer printouts or manually produced records" whether furnished by Farm Bureau or purchased by the Plaintiffs and the other putative class members. The Defendants claimed sole and exclusive ownership and right to such information and things and prohibited the Plaintiffs and other putative class members from copying, duplicating or reproducing any such information or thing without its prior written consent. They also required the Plaintiffs and the other putative class members to surrender all such items at the time of their separation from the Defendants (even if Plaintiff and/or the putative class members had themselves purchased the items or information).

82. The Defendants required the Plaintiffs and others similarly situated to pay commissions to their predecessors for prior work they rendered to Farm Bureau.

83. The Defendants required Plaintiff and other putative class members to authorize it to print their names and to utilize their electronic signatures on various insurance documents.

16

84. The Defendants expressly limited the authority of the Plaintiffs and other putative class members in a number of ways as detailed in its Agent's Contracts and in its advertising and social media policies.

85. The Defendants controlled the manner and method of payment to the Plaintiffs and other putative class members.  For example, they retained "the right to withhold payment of any or all compensation due hereunder for a period of time sufficient to give the [Farm Bureau] Companies the opportunity to determine the existence and amount of any indebtedness due, or claimed to be due, from You and other putative class members] to the Companies, to any Farm Bureau organization, or to other companies."    Likewise, they refused to recognize commissions as due and payable to Plaintiffs and other putative class members on any policy until said policy was issued and delivered to the insured and they received the first premium in their home office.  They also reserved unto themselves the exclusive rights to fix the new and renewal commissions and to change those commissions unilaterally and at any time upon their issuance of commission schedules.

86. The Defendants controlled the hiring, firing, assignment or reassignment, and commission rates of the Plaintiffs and other similarly situated misclassified Agents.  They prohibited them from assigning any of their rights to third parties.

87.  The Defendants set and/or closely monitored and effectively controlled the work, holiday and vacation schedules for the Plaintiffs and other similarly situated misclassified insurance Agents.  They required them to submit to regular evaluations where they were evaluated on production, leadership, manpower, agency development and performance,

communication and business management.  They also required them to follow State Office schedules for holidays.

88.  The Defendants subjected the Plaintiffs and other similarly situated Agents to annual or bi-annual evaluations. The evaluation reports are clearly indicative of an employee classification and not an independent contractor classification.  For example, the stated primary purpose for the evaluations is to aid the Defendants in producing high performance in their Agents as they strive to meet individual and corporate goals.

89. The Defendants keep personnel records on their Agents and keep reports of their evaluations in their files.

90.  Additionally, the Defendants regularly evaluate and grade each Agent via performance reviews.

91.  The Defendants retained the right to discipline Agents for not following their company rules.

92. The Defendants tracked the days and time their Agents worked.  They set and/or controlled work hours and/or required their Agents to sign out when leaving their offices.

93. Farm Bureau instructed their Agents regarding when, where and how they were to perform their work.  They required their Agents to conduct a certain number of reviews per year.

94. Another example of the control Defendants exercised (and/or exercises) over the Plaintiffs and other putative class members is seen in their audit authority.  They required the Plaintiffs and other putative class members to provide them with access to their books, accounts, and financial records.

95.   The Defendants also exercised control over the Plaintiffs and the other putative class members by requiring them to operate as limited liability companies and by prohibiting them from having more than one sole member.

96.   The Defendants required the Plaintiffs and other putative class members to meet sales quotas.

97.   The Defendants required the Plaintiffs and other putative class members to take continuing education on business ethics and other topics through its company-based system, "Farm Bureau Tech."

98.   The Defendants required the Plaintiffs and other putative class members to enter into non-compete and/or non-solicitation agreements which are typical in employment relationships but not in independent contractor relationships.

99.   The Defendants required the Plaintiff and other putative class members to adhere to their codes of conduct and their requirements regarding work times, office locations, dress code, mandatory production reports, monthly Agents meetings, quarterly district meetings, and state meetings.  They determined the location of branch offices from which many of the putative class members worked and provided the physical facilities, requirements and tools for their work and regulated their behavior in their facilities.

100. The Defendants monitored computer usage (including information stored, deletions, website usage, search history, and email correspondence) by the Plaintiffs and other putative class members and retained authority to block websites at their own discretion.

101.  The Defendants controlled signage, advertising and promotions utilized by Plaintiffs and other putative class members.   If the Plaintiffs and/or the others wished to advertise and/or market, they were required to have their advertisements and/or marketing materials approved by the Defendants.  The Defendants also controlled their Agents use of social media.

102.  Similarly, the Defendants provided the templates to be used on all Agents' business cards.  They also either issued business cards to the Agents or required them to buy business cards through their State Office.  All Agents were required to purchase or utilize business cards which identified them as Agents for Farm Bureau and contained the Farm Bureau name and logo.   All Agents were also provided with Farm Bureau email addresses which they were required to use.

103. The Defendants retained the right to unilaterally fire their Agents without their consent, authorization or approval.

104.  The Defendants required the Plaintiffs and other similarly situated Agents to comply with their document retention policies and requirements.

105. The Defendants required their Agents to sell and collect Farm Bureau Federation Memberships to customers as a prerequisite to selling them insurance products and/or services.

106. They required them to call customers to collect past due federation memberships for them.

107. In order to have Facebook business pages, the Plaintiffs and the other similarly situated Agents were required to pay and subscribe to "Hearsay," a Farm Bureau program that controlled postings.

108.  The Defendants required the Plaintiffs and other similarly situated Agents to purchase and/or use their errors and omissions insurance.  They were prohibited from obtaining errors and omissions coverage from their competitors.

109.  The Plaintiffs and other misclassified Agents frequently and routinely worked over 8-hour work days and over 40 hours per week for each of the Defendants.

110.  The Plaintiffs and other misclassified Agents are and/or were nonexempt employees.

111.  The Defendants illegally and/or wrongfully classified their insurance agents, including the Plaintiffs, as independent contractors; however, they were actually employees as that term is defined by the FSLA and relevant case law.

112.  The Defendants' mischaracterization of the Plaintiffs and other similarly situated insurance Agents as independent contractors, the concealment or non-disclosure of the true nature of the relationship between them and these Agents, and the attendant deprivation of substantial rights and benefits of employment, including the refusal to pay overtime wages as required by the FSLA, are part of an on-going unlawful practice by the Defendants which this Court should enjoin.

## CAUSES OF ACTION
## AGAINST ALL DEFENDANTS

113.  The foregoing paragraphs are incorporated herein as if set forth in their entirety.

114.  Defendants' practice of failing to pay the Plaintiffs and other Agents similarly situated at a time-and-a-half rate of pay for hours in excess of 40 hours per workweek violates the FLSA.  See 29 U.S.C. § 207(a)(1).

115.  None of the exemptions provided by the FLSA regulating the duty of employers to pay overtime at a rate of not less than one and one-half times the regular rate at which its

employees are employed are applicable to the Defendants or the Plaintiffs and other similarly situated Agents.

116. The Plaintiffs and others similarly situated were damaged in an amount to be proved at trial as a result of the Defendants' violations of 29 U.S.C. § 207.

117. The Defendants' failure to pay the Plaintiffs and other similarly situated Agents overtime as required by the FLSA was willful and was not based on good faith and reasonable belief that its conduct complied with the FSLA.

118. The Defendants were aware of the FLSA's requirement that all non-exempt employees be paid time-and-a-half their regular rate of pay for all hours worked in excess of 40 hours in a workweek. They were aware that they failed to adhere to that requirement.

119. The Defendants were aware of the specific job duties of their Agents and were aware that those duties did not fit within any exemption to the FLSA's requirement for overtime pay.

120. The Defendants knew that the position of insurance Agents, as the job was intended and was performed by the Plaintiffs and other similarly situated Agents, was consistent with an employment relationship under the FLSA and controlling case law and that it was improper to classify (or, rather, misclassify) its Agents as independent contractors.

121. The Defendants knew or showed reckless disregard for the proper classification of the Plaintiffs and other similarly situated Agents when they classified them as exempt independent contractors.

122. The Defendants willfully misclassified the positions of the Plaintiffs and other similarly situated Agents as exempt.

123. The Plaintiffs and others similarly situated were damaged in an amount to be proved at trial as a result of the Defendants' willful violations of the FLSA.

124. The Defendants acted in bad faith when they failed to properly pay the Plaintiffs and other similarly situated Agents for their overtime work.

125. The Defendants knew or should have known that they were violating the FLSA when they failed to properly pay the Plaintiffs and other similarly situated Agents for their overtime work.

126. Accordingly, the Plaintiffs and the other putative class members are entitled to recover double or liquidated damages from the Defendants.

127. The Plaintiffs and other similarly situated Agents are entitled to a judicial declaration that they were and/or are employees of the Defendants. They are entitled to a judicial declaration that they were not and are not independent contractors despite the Defendants' misclassifying them as such. They are entitled to judicial declarations that the Defendants' acts, policies, practices and procedures complained of herein violated provisions of the FLSA.

128. The Plaintiffs and others similarly situated are entitled to recover their unpaid overtime compensation.

129. The Plaintiffs and others similarly situated are entitled to additional amounts equal to their unpaid overtime compensation as liquidated damages. See 29 U.S.C. § 216(b).

130. The Plaintiffs and others similarly situated are entitled to recover their attorneys' fees and costs. See 29 U.S.C. § 216(b).

131. The Plaintiffs and others similarly situated are entitled to pre- and post-judgment interest.

**PRAYER FOR RELIEF**

132. For these reasons, the Plaintiffs respectfully request the following relief for themselves and on behalf of all other similarly situated individuals:

a. That the Court certify the putative class named in this Complaint as an opt-in collective action under 29 U.S.C. § 216(b) and Rule 23 of the Federal Rules of Civil Procedure and enter an order allowing this action to proceed as a collective and class action under said authorities;

b. That the Court declare the rights and duties of the parties consistent with the relief sought herein;

c. That the Court issue a declaratory judgment that each Defendant's acts, policies, practices, and procedures complained of herein violated provisions of the FLSA;

d. That the Court enjoin the Defendants from committing further violation of the FLSA;

e. That the Court award the Plaintiff and the other putative class members overtime compensation for all hours worked over 40 hours in a workweek at the applicable time-and-a-half rate;

f. That the Court award the Plaintiffs and the other putative class members equal amounts of all owed wages as liquidated damages as allowed under the FLSA;

g. That the Court award the Plaintiffs and the other putative class members' reasonable attorneys' fees, costs, pre-judgment interest, post-judgment interest and expenses;

i. That the Court award appropriate incentive awards for any class representatives; and

j. That the Court award the Plaintiffs and the putative class members such additional relief as the interests of justice may require.

RESPECTFULLY SUBMITTED,

GAFFNEY LEWIS & EDWARDS, LLC

s/ Amy L. Gaffney_____
Amy L. Gaffney
Federal I.D. Number:  6316
Regina Hollins Lewis

**24**

Federal I.D. Number:  7553
Susan Rawls Strom
Federal I.D. Number:  7971
Gaffney Lewis & Edwards, LLC
3700 Forest Drive, Suite 400
Columbia, SC  29204
(803) 790-8838
(803) 790-8841—facsimile
agaffney@glelawfirm.com

YARBOROUGH APPLEGATE LLC
David B. Yarborough, Jr.
Federal I.D. Number:  7336
William E. Applegate, IV
Federal I.D. Number:  9261
Christopher J. Bryant
Federal I.D. Number:  12538
291 East Bay Street
Charleston, SC  29401
(843) 972-0150
(843) 277-6691 –facsimile
david@yarboroughapplegate.com
william@yarboroughapplegate.com
chris@yarboroughapplegate.com

**ATTORNEYS FOR STEVEN LANEY AND
ALEXANDROS STELLER, Individually and on
behalf of others similarly situated**

**OF COUNSEL**:

**CLAYTON O'DONNELL, PLLC**
**S. Ray Hill, III**
P. O. Drawer 676
Oxford, MS 38655
(662) 234-0900
(662) 234-0900 - facsimile
rhill@claytonodonnell.com

**CLAYTON O'DONNELL, PLLC**
**Dana G. Dearman**
P. O. Box 755
Tupelo, MS 38802-0755
(662) 620-7938
(662) 620-7939 - facsimile
ddearman@claytonodonnell.com

December 3rd, 2018